UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PRINCE AWULYE,

                Petitioner,

-v-

UNITED STATES OF AMERICA,

                Respondent.

No. 17-cv-4365 (RJS)

---

UNITED STATES OF AMERICA

-v-

PRINCE AWULYE,

                Defendant.

OPINION & ORDER

No. 13-cr-875-1 (RJS)

---

RICHARD J. SULLIVAN, Circuit Judge:

    Petitioner Prince Awulye ("Petitioner"), proceeding *pro se*, brings this petition for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2255 in connection with his conviction and sentence for participating in two conspiracies to distribute and possess with intent to distribute heroin. (Doc. No. 2 ("Petition" or "Pet.").)[1] For the reasons set forth below, the Petition is DENIED.

---

[1] Unless otherwise noted, all docket citations refer to the docket in the civil case, 17-cv-4365 (RJS).

## I. BACKGROUND[2]

In early 2010, Petitioner agreed to transport heroin for David Amoah, whose organization imported heroin from Ghana and sold it along the East Coast of the United States. (Tr. at 117.) On February 13, 2010, Petitioner flew from John F. Kennedy International Airport in New York to Accra, Ghana, where he picked up approximately one kilogram of heroin from Luvman Alison, an associate of Amoah's. (*Id.* at 91.) Seven days later, he returned to New York with the heroin hidden in the lining of his carry-on suitcase. (*Id.* at 368–69.) After successfully passing through customs, Petitioner traveled to the Bronx, where he delivered the kilogram of heroin to Amoah and received approximately $10,000. (*Id.* at 128–29.) About a month later, Petitioner agreed to pick up more heroin for Amoah from Ghana. He again flew to Accra on March 31, 2010, but this time his family discovered he was there to get drugs and threatened to report him and his co-conspirators to the authorities; accordingly, he did not return with any heroin. (*Id.* at 91, 109.)

In December 2011, Petitioner once again contacted Amoah – who was now cooperating with the government – looking for work. (*Id.* at 178, 198.) At the FBI's instructions, Amoah told Petitioner he was still in the heroin business and that he needed three kilograms of heroin transported from California to the East Coast. (*Id.* at 204, 212.) While Petitioner was unable to make the trip to California because he did not have enough time off from work (*id.* at 215), he nevertheless agreed to pick up a bag containing heroin from a friend of Amoah's at Newark Airport and deliver it to Amoah in the Bronx (Pet. at 3). On January 13, 2012, Petitioner picked up the bag – which actually contained sham heroin – from the "friend," who was actually an undercover

---

[2] The following facts are taken from the trial transcript (Doc Nos. 61, 63, 65, and 67 (together, "Tr.")), with all inferences drawn in favor of the government. *See Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994); *United States v. Gomez*, 644 F. Supp. 2d 362, 366 (S.D.N.Y. 2009) (Chin, J.). In ruling on the Petition, the Court has also relied on Petitioner's habeas petition (Doc. No. 2), the government's memorandum in opposition (Doc. No. 6), and Petitioner's reply (Doc. No. 7).

FBI agent. (*Id.* at 2–3; Tr. at 74–75.) Petitioner then delivered the bag to Amoah, who paid him $1,000 in cash. (Pet. at 2–3; Tr. at 76.) On July 31, 2012, Petitioner returned to Newark Airport to pick up a second bag of heroin from Amoah's courier – again, actually sham heroin from an undercover agent. (Tr. at 81–82, 329–31.) This time, he brought along Julian Byamugisha, whom Petitioner had introduced to Amoah (*id.* at 258), and the two delivered the sham heroin to Amoah, who paid them $2,000 (*id.* at 324, 335).

Petitioner was charged by complaint on October 22, 2013, arrested a week later, and indicted on November 7, 2013 for conspiring to distribute heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). (13-cr-875, Doc. Nos. 1–10.) Soon after his arrest, the Court appointed Guy Oksenhendler to serve as defense counsel under the Criminal Justice Act. (*Id.*, Doc. Nos. 4, 12.) On November 5, 2013, Petitioner was released from custody on pre-trial bail. (*Id.*, Doc. No. 6.)

On July 8, 2014, a federal grand jury returned a two-count second superseding indictment. (13-cr-875, Doc. No. 28.) Count One charged Petitioner with participating in a conspiracy to distribute heroin in 2010; Count Two charged Petitioner with participating in a conspiracy to distribute heroin in 2012. (*Id.*) Trial was originally set to begin on July 28, 2014. (*See id.*, Doc. No. 23.) However, a few days before the start of trial, Petitioner was arrested while attempting to enter Canada using falsified travel documents. (*See* Tr. at 2.) As a result, Petitioner failed to appear for trial as scheduled on July 28, 2014, and the Court revoked Petitioner's bail. (*Id.*; 13-cr-875, Doc. No. 47.) Petitioner was returned to New York the next day, July 29, 2014, and trial promptly commenced. (Tr. at 2.) Four days later, the jury convicted Petitioner on both counts of the operative indictment. (*Id.* at 531–532.)

At trial, Petitioner made a motion for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure on Count One only, which the Court denied. (Tr. at 414.)

3

On September 30, 2014, Petitioner renewed his motion for a judgment of acquittal on Count One, and also moved, in the alternative, for a new trial pursuant to Rule 33 on that count. (13-cr-875, Doc. Nos. 75, 75-1.) The Court denied those motions on October 7, 2014 (13-cr-875, Doc. No. 76), and, on April 8, 2015, the Court sentenced Petitioner principally to a term of 10 years' imprisonment (Doc. No. 96). Petitioner appealed his conviction to the Second Circuit, which affirmed in a decision dated September 22, 2016; the Supreme Court subsequently denied Petitioner's request for a writ of certiorari. *See United States v. Awulye*, 662 F. App'x 15 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 705 (2017). Petitioner filed the present habeas petition pursuant to 28 U.S.C. § 2255 on June 9, 2017 (Pet.), and it was fully briefed on September 14, 2017 (*see* Doc. No. 7).

## II. LEGAL STANDARD

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under Section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'" *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation omitted). A claim of ineffective assistance

4

of counsel, however, is one permissible basis for bringing a Section 2255 petition. *See Massaro v. United States*, 538 U.S. 500 (2003).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel. When challenging the effectiveness of counsel's assistance, a criminal defendant must demonstrate that (1) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). A court must reject a petitioner's ineffective assistance of counsel claim if it fails to satisfy either prong of the *Strickland* test. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

With respect to *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 690–91). Because there are many different ways to provide effective assistance in any given case and "[e]ven the best criminal defense attorneys would not defend a particular client the same way," the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

As for *Strickland*'s second prong, Petitioner "must show that his counsel's unreasonable conduct prejudiced the outcome of his trial, such that [the Court's] confidence in the outcome is

undermined." *Cox v. Donnelly*, 387 F.3d 193, 199 (2d Cir. 2004). "The level of prejudice [Petitioner] need demonstrate lies between prejudice that had 'some conceivable effect' and prejudice 'that more likely than not altered the outcome in the case.'" *Id.* (quoting *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001)).

### III. DISCUSSION

Petitioner asserts that his trial counsel, Guy Oksenhendler ("Trial Counsel"), provided constitutionally ineffective assistance by: (1) failing to relay a plea offer to Petitioner; (2) failing to "fully argue" the sufficiency of the evidence in his Rule 29 motion; and (3) failing to object to the government's vouching for its witnesses during closing arguments. Additionally, Petitioner asserts that the jury instructions constructively amended the indictment. The Court considers each argument in turn, and concludes that none has merit.

#### A. Failure to Relay Plea

Petitioner argues that Trial Counsel was ineffective for failing to relay a plea offer made by the government before trial. "[A]s a general rule, defense counsel has the duty to communicate formal prosecution offers to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Here, however, at the final pre-trial conference on July 23, 2014, Petitioner acknowledged in open court "that the plea offer was conveyed to [him] and [he] decided it was not in [his] interest to accept it." (13-cr-875, Doc. No. 50 at 18.) Thus, Petitioner's assertion that Trial Counsel failed to relay the plea offer is belied by the record. Accordingly, this claim of ineffective assistance fails.

#### B. Sufficiency of the Evidence

Petitioner next contends that Trial Counsel was constitutionally ineffective for failing to "fully argue" the sufficiency of the evidence in his Rule 29 motion with respect to both Counts

One and Two. (Pet. at 4.) Construing Petitioner's *pro se* memorandum of law to raise the strong possible argument it suggests, *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996), the Court will consider Petitioner's claim as principally arguing that Trial Counsel rendered ineffective assistance by electing not to move for a judgment of acquittal at all on Count Two, either at the close of the government's case at trial or in a post-trial motion. (Tr. at 414; 13-cr-875, Doc. Nos. 75, 75-1.) Nevertheless, the Court rejects this argument.

With respect to *Strickland*'s first prong, there is no professional requirement that defense counsel file a motion for a judgment of acquittal on every count in every case no matter the merits of the motion. *See United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987) ("We are understandably reluctant to require defense counsel routinely to file boilerplate motions merely to vindicate their professional competence without regard for the grounds supporting such motions."). In this case, "[g]iven the conclusive strength of the government's evidence, a Rule 29 motion would have been unavailing." *Baxter v. United States*, No. 3:09-cv-368 (SRU), 2010 WL 4823241, at *2 (D. Conn. Nov. 18, 2010). The government presented overwhelming evidence of the 2012 conspiracy charged in Count Two, including audio recordings and photographs of Petitioner picking up and delivering what he believed to be heroin, cooperator testimony from Amoah and Byamugisha, and Petitioner's attempt to abscond days before trial. Moreover, although Trial Counsel did not make a Rule 29 motion with respect to Count Two, the Court nonetheless ruled that "the evidence at trial was sufficient to sustain Defendant's convictions *for both counts*" (13-cr-875, Doc. No. 76 at 3 (emphasis added)), and the Second Circuit also specifically rejected a sufficiency claim for Count Two, concluding that evidence of the 2012 conspiracy was "more than sufficient." *Awulye*, 662 F. App'x at 17–18. Because the Court clearly
7

would have rejected any Rule 29 motion as to Count Two, Trial Counsel's decision not to file such a baseless motion was neither unreasonable nor prejudicial.

Petitioner likewise cannot demonstrate ineffective assistance of counsel with respect to Trial Counsel's motion for a judgment of acquittal on Count One. With respect to the first prong of *Strickland*, there was nothing unreasonable about Trial Counsel's oral motion for a judgment of acquittal at the close of the government's case or his post-trial motion pursuant to Rule 29(c). (*See* Tr. at 414; 13-cr-875, Doc. Nos. 75, 75-1.) Moreover, as with the evidence of the 2012 conspiracy, the evidence of the 2010 conspiracy was overwhelming, and included cooperator testimony from Amoah and Ebenezer Barnes (another co-conspirator), in addition to numerous recorded phone calls revealing that Petitioner agreed to retrieve heroin from Ghana for sale in the United States. As the Court observed when denying Petitioner's Rule 29(c) motion, the evidence was certainly sufficient to support the jury's verdict with respect to Count One. (13-cr-875, Doc. No. 76 at 3.)

In sum, even a lawyer with the skill of Clarence Darrow or Johnny Cochrane would have been unable to overcome the government's proof and prevail on a Rule 29 motion. Accordingly, Petitioner's ineffectiveness claim relating to Trial Counsel's Rule 29 motion must also fail.

### C. Failure to Object During Summation

Petitioner next claims that Trial Counsel was ineffective for failing to object to the government's "vouching" for witnesses Amoah and Barnes in comments made at trial during the main and rebuttal summations. But "[t]he prosecution and the defense are generally entitled to wide latitude during closing arguments, so long as they do not misstate the evidence." *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998). "The law has long recognized that summations – and particularly rebuttal summations – are not detached expositions," so "prosecutors' comments standing alone will rarely warrant overturning conviction." *United States v. Farhane*, 634 F.3d

127, 167 (2d Cir. 2011) (internal quotation marks and citations omitted). Thus, while "attorney statements vouching for the credibility of witnesses are generally improper[,] . . . what might superficially appear to be improper vouching for witness credibility may turn out on closer examination to be permissible reference[s] to the evidence in the case." *United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998). In addition, "the government is allowed to respond to an argument that impugns . . . the integrity of its case, and when the defense counsel have attacked . . . the credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion." *United States v. Thai*, 29 F.3d 785, 807 (2d Cir. 1994) (internal quotation marks and citations omitted). Applying these standards here, the Court concludes that Trial Counsel did not unreasonably fail to object to improper vouching, since no such vouching occurred; the government's challenged statements were references to the evidence, or, at most, permissible responses to Trial Counsel's attacks on the credibility of the government's witnesses.

Trial Counsel attacked the credibility of the government's witnesses from the start of trial, stating in opening that "[t]he people [who] the government is relying on to establish [its] evidence are terrible people . . . [who] don't care about anyone but themselves." (Tr. at 33–34.) Trial Counsel continued this strategy during cross-examination, repeatedly questioning Amoah about times he had lied in the past. (*E.g.*, *id.* at 299 ("Q: [T]ime and time again in your life you've lied and other people have gotten hurt, right? A: I never lied on other people. Q: Well, you, certainly, lied to benefit yourself, correct? A: Yes.")). Trial Counsel similarly suggested that Barnes and Byamugisha were not credible witnesses due to their prior criminal conduct, dishonesty, and/or incentive to assist in the prosecution of Petitioner. (*See id.* at 338, 345, 375–77, 380–84.)

In response to this strategy, the government, in its main summation, asked the jury to "scrutinize the testimony of [Amoah and Barnes] carefully," arguing that they "should . . . believe

these witnesses' testimony" because "they had no reason to lie and every reason to tell the truth" in light of their cooperation agreements. (Tr. at 437–38, 445.) Trial Counsel's subsequent summation again focused heavily on the credibility of these government witnesses, as well as Byamugisha, arguing that "[t]hese people have lied and lied and lied" and calling Amoah "one of the worst witnesses that has testified in this courthouse." (*Id.* at 451, 453.) The government, in rebuttal, reiterated that its witnesses were all "incentivize[d] to tell the truth" (*id.* at 472), and referred to the evidence introduced at trial that corroborated their testimony (*id.* at 467–69).

Because the government's statements referenced evidence presented in the case and responded to the defense's attack on its witnesses' credibility, Petitioner cannot show that his Trial Counsel's failure to object was unreasonable under *Strickland*. *See, e.g., Tocco*, 135 F.3d at 130 (concluding that alleged vouching and "inflammatory comments" in the prosecution's rebuttal were "fair responses" to "the issues raised and the atmosphere created by [the defendant's] own making through the defense summation"); *see also Farhane*, 634 F.3d at 167 ("Precisely because such arguments frequently require improvisation, courts will not lightly infer that every remark is intended to carry its most dangerous meaning." (internal quotation marks and citation omitted)). Moreover, because any objection to the government's statement surely would have been overruled, and since, as noted above, the evidence against Petitioner was nothing short of overwhelming, Petitioner cannot show prejudice. Thus, Petitioner's claim of ineffective assistance during the government's summation must fail.

### D. Constructive Amendment

Finally, Petitioner argues that the jury instructions constructively amended the indictment. Specifically, Petitioner contends that the evidence "clearly proved that [he] conspired with others to *import* a controlled substance, not [to] *distribute*" it. (Pet. at 9 (emphasis added).) This claim

is without merit. First, Petitioner procedurally forfeited his constructive amendment claim by failing to raise it on direct appeal. To raise this argument for the first time in his § 2255 motion, he must "demonstrate either: (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence." *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998). Petitioner offers no explanation for his failure to raise this claim on direct appeal, nor has he suggested that his appellate counsel was ineffective for failing to do so. And as implied by the discussion above, Petitioner cannot demonstrate that he is actually innocent of the charged crimes, since the proof of his guilt was overwhelming.

But even on the merits, Petitioner's constructive amendment argument is baseless, and may be summarily rejected. "There is no constructive amendment where a generally framed indictment encompasses the specific legal theory or evidence used at trial." *United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005) (internal quotation marks omitted). Here, Counts One and Two charged Petitioner with participating in conspiracies to distribute and possess with the intent to distribute heroin in 2010 and 2012, respectively. The proof at trial closely tracked the indictment on both counts. It demonstrated that in 2010, at Amoah's request, Petitioner traveled from the United States to Ghana, smuggled heroin back into the United States, and delivered it to Amoah for distribution in the Bronx. He then accepted $10,000 as payment for his participation in the conspiracy. (Tr. at 91, 128–29, 368–69, 428.) He also made a second trip to Ghana, intending to retrieve more heroin, which was to be smuggled back into the United States so it could be distributed here. (*Id.* at 109.) As to Count Two, the evidence established that Petitioner agreed with Byamugisha to pick up and deliver heroin from the airport in Newark for distribution in the United States in 2012. (*Id.* at 335.) The allegations of distribution and the proof at trial thus "substantially correspond" to both counts of the indictment. *United States v. Danielson*, 199 F.3d

666, 670 (2d Cir. 1999) (quoting *United States v. Patino*, 962 F.2d 263, 266 (2d Cir. 1992)). In fact, the Court rejected a similar distribution versus importation argument in Petitioner's Rule 29 and Rule 33 post-trial motion. (13-cr-875, Doc. Nos. 75-1 at 4, 76 at 3.)

For all these reasons, Petitioner's constructive amendment claim must fail.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT the Petition is DENIED. In addition, because Petitioner has not "made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be undertaken in good faith, and, therefore, Petitioner may not proceed *in forma pauperis*. The Clerk of Court is respectfully directed to terminate the motion pending at document number 105 in Case No. 13-cr-875, to close Case No. 17-cv-4365, and to mail a copy of this Opinion and Order to Petitioner.

SO ORDERED.

Dated: February 18, 2020
New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation